UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DENISE PRICE, *et al.*,

Plaintiff,

v.

OFFICER MICHAEL PEARSON, *et al*.,

Defendant.

Civil Action No. 20-00614-RBW

## DEFENDANTS' MOTION TO BIFURCATE CLAIMS AND STAY DISCOVERY

Defendants the District of Columbia (the District) and D.C. Metropolitan Police Department (MPD) Officers Michael Pearson, Anthony Gaton, and David Jarboe (collectively, Defendants) move to bifurcate litigation and trial of Plaintiffs' constitutional claims against the District from Plaintiffs' claims against the individual officers, and to stay related discovery. All of Plaintiffs' claims stem from a roadway collision involving Officer Pearson and Jeffrey Price, Jr., which resulted in Mr. Price's death. Plaintiffs allege that Officer Pearson intentionally or negligently caused the collision, and that the District is deliberately indifferent to an MPD custom of intentional collisions, and/or failed to adequately train or supervise the individual officers. Defendants believe this was simply a tragic accident, caused by Mr. Price's reckless operation of a dirt bike at high speed in the wrong lane.

Plaintiffs intend to seek extensive and burdensome discovery concerning the District's policies and practices. In the parties' initial scheduling conference, for example, Plaintiffs said they expect discovery to exceed $100,000 in costs; to entail more than a dozen fact depositions, including the chief of police; and to involve presentation of potentially *hundreds* of witnesses

concerning allegedly similar collisions. And Plaintiffs continue to conflate the facts here with the facts in a prior collision-case handled by Plaintiffs' counsel, *Robinson v. District of Columbia*, in support of their *Monell* claims.  Plaintiffs' litigation plan will undoubtedly result in serial disputes about the scope of discovery and, if permitted, would unduly prejudice trial of Plaintiffs' claims against the individual-officer defendants.

But this is all avoidable. Plaintiffs' constitutional claims against the District cannot possibly succeed unless they first prove that an MPD officer committed a constitutional violation by colliding with Mr. Price on purpose. Thus, to eliminate undue prejudice against the individual officers at trial, and to avoid the tremendous and potentially unnecessary burden of discovery and litigation of Plaintiffs' *Monell* claims, the Court should bifurcate Plaintiffs' constitutional claims against the District and the individual officers and stay discovery into those claims until Plaintiffs have obtained a judgment that a District employee violated the constitution. *See* Fed. R. Civ. P. 42(b); *McIntosh v. District of Columbia*, Civil Action No. 96-200, 1997 WL 785624, at *2-4 (D.D.C. Dec. 9, 1997) (granting motion to bifurcate litigation of predicate constitutional violation and *Monell* liability, and to stay discovery concerning *Monell* liability).

A memorandum of points and authorities and a proposed order accompany this motion.

## **RULE 7(m) CERTIFICATE**

Counsel for the District discussed its intent to file this Motion and the relief sought with counsel for Plaintiffs on June 25, 2020.  Plaintiffs oppose the Motion.

Date: July 31, 2020                    Respectfully submitted,

                                       KARL A. RACINE
                                       Attorney General for the District of Columbia

                                       CHAD COPELAND
                                       Deputy Attorney General
                                       Civil Litigation Division

/s/ Michael K. Addo
MICHAEL K. ADDO [1008971]
Chief, Civil Litigation Division Section IV

/s/ David A. Jackson
DAVID A. JACKSON [471535]
Assistant Attorney General
Office of the Attorney General
Suite 630 South
441 Fourth Street, NW
Washington, DC  20001
(202) 724-6618
(202) 741-8999 (fax)
davida.jackson@dc.gov

/s/ Asha S. Bryant
ASHA S. BRYANT [1022294]
Assistant Attorney General
Office of the Attorney General
Suite 630 South
441 Fourth Street, NW
Washington, DC 20001
(202) 807-0359 (direct)
(202) 727-6295 (main)
(202) 213-8820 (mobile)
(202) 741-8886 (fax)
asha.bryant2@dc.gov

/s/ Mateya B. Kelley
MATEYA B. KELLEY [888219451]
Assistant Attorney General
Office of the Attorney General
Suite 630 South
441 Fourth Street, NW
Washington, DC 20001
mateya.kelley@dc.gov
(202) 724-7854  (Phone)
(202) 730-0626  (Fax)

3

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DENISE PRICE, *et al.*,<br><br>       *Plaintiff,*<br><br>  v.<br><br>OFFICER MICHAEL PEARSON, *et al*.,<br><br>       *Defendant.* | Civil Action No. 20-00614-RBW |

## DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION TO BIFURCATE CLAIMS AND STAY DISCOVERY

### INTRODUCTION

Plaintiffs Denise and Jeffery Price, Sr. on behalf of themselves and the estate of their late son, have sued the District of Columbia (the District) and three District police officers—Michael Pearson, Anthony Gaton, and David Jarboe—(collectively, Defendants), in connection with a 2018 traffic accident that caused the death of Jeffery Price, Jr. Plaintiffs raise D.C. common law and constitutional claims. They allege that Officer Pearson intentionally collided with Mr. Price; that officers Gaton and Jarboe chased Mr. Price into a trap; and that the District is deliberately indifferent to its officers' customary practice of intentionally colliding with bikers. Defendants will show this was simply an avoidable tragic accident caused by Mr. Price.

The Court should bifurcate and phase litigation of plaintiffs' constitutional claims against the individual officers from its claims against the District for two reasons. First, a determination that Pearson and Price accidentally collided, as opposed to intentionally, would extinguish plaintiffs' constitutional claims against the District and would avoid extensive, burdensome, and likely protracted discovery into, and litigation of, plaintiffs' claims against the District. Second, a

bifurcated trial of plaintiffs' claims against the individual officers and the District (if necessary) would avoid the undue prejudice that would otherwise infect the individual officers' defenses.

## BACKGROUND

Plaintiffs initially filed suit against the District for the death of Mr. Price on May 1, 2019. *See Price v. District of Columbia*, Civil Action No. 19-1272 (*Price I*). Defendants moved to dismiss the complaint under Federal Rule of Civil Procedure 8, for failure to present a concise statement, or to strike most of the complaint, under Rule 12, as scandalous and prejudicial. *Id.*, ECF [5]; *see also* [11] (opposition), [12] (reply). The Court dismissed the complaint, without prejudice, on February 28, 2020. *Id.* at [21] (order). Plaintiffs filed the instant action on March 2, 2020. *Price v. District of Columbia*, Civil Action No. 20-614 (*Price II*).

Plaintiffs have asserted several theories of liability under District common law, as well as under the Fourth and Fifth Amendments, through 42 U.S.C. § 1983. Plaintiffs allege that Officer Pearson intentionally used his vehicle as a barricade to block Mr. Price's path, knowing his action could lead to serious injury or death. *E.g.*, Compl. ¶ 3. They assert claims for violation of the Fourth and Fifth amendments, and for negligence, assault, battery, negligent infliction of emotional distress, and intentional infliction of emotional distress, on behalf of the decedent's estate and his survivors. *Id.* at pp. 2-3 (table of contents); 17, 35 (Counts I and X, Fourth Amendment); 19, 37 (II and XI, Fifth Amendment); 25, 43 (IV and XIII, negligence); 27, 46 (V and XIV, assault); 29, 48 (VI and XV, battery); 31, 50 (VII and XVI, negligent IED); 32, 52 (VIII and XVII, IIED). Plaintiffs allege officers Gaton and Jarboe intentionally chased Mr. Price into the collision. *Id.* ¶¶ 11-13. Plaintiffs assert claims against the District for supervisory liability under District common law; municipal liability under *Monell v. New York City Dep't of Soc. Servs.,* 436 U.S. 658 (1978), alleging that the District has an unconstitutional custom, policy

2

and practice of allowing or encouraging police officers to use their vehicles to ram or barricade dirt bikes driven by Black people; and negligent hiring, training and supervision under District common law. *E.g.*, *id.* ¶ 10 (*respondeat superior* liability); *id.* at 21, 39 (III and XII, *Monell* claims); 33, 53 (IX and XVIII, negligent hiring, training and supervision).

With respect to their *Monell* claims against the District, Plaintiffs allege that at "all levels of the District's MPD from the top down, including Chiefs of Police, Assistant Chiefs of Police, District Commanders, District Captains, District Lieutenants, District Sergeants and Rank and File police officers, the MPD tolerated and ignored the pattern and practice of targeting black bikers with MPD vehicles … ." Compl. ¶ 73.  They further allege that it is the policy of MPD to, *inter alia*, "encourage and permit officers on patrol in their vehicles to intimidate black motorcyclists," to "condone abuses of police power by its officers," and "to fail to train and discipline its officers." *Id.* ¶¶ 77, 80, 81. They allege that "[t]he District actively engages in cover-ups of these Constitutional violations by employing its Department high level officers and leadership to routinely white wash the obvious lies and sanitizing adverse facts deliberately to exonerate its officers and to avoid judgments … ." *Id.* ¶ 46(L).

Plaintiffs rely in part on allegations from a prior case, *Robinson v. District of Columbia*, Civil Action No. 09-02294 (D.D.C.), to support their *Monell* claims.  *E.g.*, ¶¶ 39-42.  The *Robinson* case concerned a young Black man, Arnell Robinson, who died as a result of his motor bike colliding with a police car driven by MPD Detective Michael Pepperman.[1]  Plaintiffs' counsel here, David Shurtz, also represented the plaintiffs in the *Robinson* case. The *Robinson*

---

[1]        The Court may take judicial notice of the facts alleged or established in the *Robinson* case.  *E.g. Veg-Mix, Inc. v. U.S. Dep't of Agric.*, 832 F.2d 601, 606 (D.C. Cir. 1987) ("Courts may take judicial notice of official court records … ."). *See Robinson v. District of Columbia*, 130 F. Supp. 3d 180, 183 (D.D.C. 2015) (describing facts and allegations).

plaintiffs presented "[o]ver 200 affidavits … to demonstrate a practice and pattern of knocking

bikers off bikes with police cruisers." Compl. ¶ 40.

Overall, plaintiffs expect that costs in this case "may exceed" the $100,000 spent in

*Robinson*, because of the "volume of evidence" Plaintiffs' proposed experts would be "sifting

through." Meet and Confer, [10] at 17. They have requested "at least" a year to complete

discovery, *id*. at 3 and 17, and note that it took seven years to bring *Robinson* to summary

judgment (which was denied for both sides). *Id*. at 17; 130 F. Supp. 3d 180. They seek more than

a dozen fact depositions, plus an unknown number of expert depositions. [10] at 16-17. Plaintiffs

anticipate calling five experts. *Id*. at 8.

In support of their *Monell* claims specifically, Plaintiffs intend to introduce testimony

from all or part of the 200-plus witnesses they identified while litigating the *Robinson* case.

Compl. ¶ 40; Meet and Confer Statement, [10] at 4; Ex. A, Pls.' Opp'n to Confidentiality and

Secrecy in Protective Order, [12-1] at 2 (interview with Plaintiffs' counsel in *Washington City*

*Paper*, noting counsel "collected about 230 sworn affidavits" in the *Robinson* case and "Price's

family can theoretically use all of them to bolster their case and show a pattern and practice").

Also in support of their *Monell* claims, Plaintiffs intend to continue developing facts

concerning what they see as a direct connection between this case and the *Robinson* case: MPD

Detective Michael Pepperman. As stated, Pepperman was a defendant in *Robinson*.  He was

accused of having stopped his vehicle in the middle of a street with the intent to cause a

collision. *Robinson v. District of Columbia*, 130 F. Supp. 3d 180, 183 (D.D.C. 2015).

Pepperman was not involved in the collision at issue here.  *See generally* Complaint. In

Plaintiffs' initial complaint, they alleged that Pepperman was in charge of MPD's investigation

of the collision at issue here.  *See Price I*, Civil Action No. 19-1272, [1] ¶ 21.  Indeed, much of

Plaintiffs' initial complaint was about Pepperman. *E.g.*, *id.* ¶¶ 42-44, 53-79, 82-86.

Pepperman's name does not appear in Plaintiffs' re-filed, operative complaint, but Plaintiffs have repeatedly made clear that they still intend to pursue discovery concerning Pepperman's involvement in MPD's investigation of the collision, and their related theory that MPD officers at "all levels" are covering up facts, and to put those facts at issue in trial. *See*, *e.g.*, *Price I*, Compl. ¶¶ 73, 46(L); Meet and Confer Statement, [10] at 14 (seeking "Running Resumes related to the collision, especially with respect to Major Crash Investigative Unit," where Pepperman works); *id* at 15 (same); *id.* at 16 (seeking deposition of Pepperman); *see also* Pls.' Emergency Mot. to Produce 51 Videos, [15] at 7-10 (arguing relevance of Pepperman's actions in *Robinson* matter to request for release of evidence in this case); Trans. of July 10, 2020 Scheduling Conference, [15-8] at 19:25-20:6 (arguing MPD "culture," as evidenced by Pepperman's actions, is relevant to question of whether officers in this case intentionally collided with Price) Plaintiffs also intend to depose Chief of Police Peter Newsham, in order to examine his alleged decision to retain Pepperman at MPD and to permit Pepperman to work as a collision investigator.[2]

## STANDARD OF REVIEW

### I.   Rule 42(b)

Federal Rule of Civil Procedure 42(b) permits trial courts to order a separate trial of one

---

[2]    This is a paraphrase of plaintiffs' response to defendants' question at the initial scheduling conference as to why they needed to depose Chief Newsham. *See also Price I*, Civil Action No. 19-1272, [1] ¶ 126 ("When Chief Newsham was Asst. Chief of Internal Affairs, he was in a direct line of supervision over the fate of Pepperman's status on MPD."); *id.* ¶¶ 172-194 (allegations concerning Pepperman and Newsham). Plaintiffs' counsel also appears to have explained this theory to a reporter at the *Washington City Paper* just days before the scheduling conference with the Court in this case. [12-1] at 3 (news article dated July 9, 2020 and filed July 10, 2020, stating "Officer Pepperman's involvement in both cases [*Robinson* and *Price*] raises questions about the integrity of MPD's internal review and disciplinary mechanisms.").

or more separate issues or claims for "convenience, to avoid prejudice, or to expedite and economize[.]" Thus, "[b]ifurcation may be appropriate 'where the evidence offered on two different issues will be wholly distinct, or where litigation of one issue may obviate the need to try another issue.'" *Athridge v. Aetna Cas. & Sur. Co.*, 604 F.3d 625, 635 (D.C. Cir. 2010). (quoting *Vichare v. AMBAC Inc.*, 106 F.3d 457, 466 (2d Cir. 1996)). Bifurcation is especially appropriate where separation of claims, and trial of preliminary issues, could avoid otherwise unnecessary and costly discovery. *Ellingson Timber Co. v. Great Northern Ry. Co.*, 424 F.2d 497, 499 (9th Cir. 1970) ("One of the purposes of Rule 42(b) is to permit deferral of costly and possibly unnecessary discovery proceedings pending resolution of potentially dispositive preliminary issues."); *McIntosh v. District of Columbia*, Civil Action No. 96-00200, 1997 WL 785624, at *3 (D.D.C. Dec. 9, 1997) ("[I]t is possible to combine bifurcation for trial with the postponement until after the first trial, of discovery relevant only to Plaintiff's claims against the inactive Defendants. Thus, it will be possible to defer, and possibly save altogether, the need for the postponed discovery.") (internal quotations omitted).  "A separate trial also may be ordered to avoid prejudice, as when evidence admissible only on a certain issue may prejudice a party in the minds of the jury on other issues." 9A Charles Alan Wright & Arthur R. Miller, *Fed. Prac. 7 Pro.* § 2388 Separate Trials—Discretion of Court (3d ed. Apr. 2020); *see also*, *e.g.*, *McIntosh*, 1197 WL 785624, at *3 (ordering bifurcation of claims where trial against officer could eliminate need for trial against the District and avoid discovery disputes concerning District, and evidence against the District could unduly prejudice individual officer's defense).  Bifurcation is discretionary. *Athridge*, 604 F.3d at 635.

## II.   <u>Rule 26(b)</u>

Under Federal Rule of Civil Procedure 26(b)(1), the scope of discovery is limited to "any

nonprivileged matter that is relevant to any party's claim or defense and proportional to the

needs of the case … ." The Court "must limit the frequency or extent of discovery" if it

determines that "the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed.

R. Civ. P. 26(b)(2)(C). The Court should consider "the importance of the issues at stake in the

action, the amount in controversy, the parties' relative access to relevant information, the parties'

resources, the importance of the discovery in resolving the issues, and whether the burden or

expense of the proposed discovery outweighs its likely benefit." *Id*. at (b)(1). "[D]istrict courts

have broad discretion over the structure, timing, and scope of discovery." *Strike 3 Holdings, LLC*

*v. Doe*, No. 18-7188, --- F.3d ---, 2020 WL 3967836, at *3 (D.C. Cir. July 14, 2020).

## ARGUMENT

### I.   Phased Litigation Could Permit All Involved to Avoid Extensive Burdens.

#### A.   Plaintiffs Must Prove the Collision Was Intentional.

To prevail on their claims under 42 U.S.C. § 1983, Plaintiffs must prove that a person

acting under color of state law caused a violation of a right secured by the Constitution, in this

case, the Fourth or Fifth amendments.  *See West v. Atkins*, 487 U.S. 42, 48 (1988) (elements of §

1983); Compl.  In order to prevail on their § 1983 claims against the District, Plaintiffs must

further show that "a custom or policy of the municipality caused the violation."  *Blue v. District*

*of Columbia*, 811 F.3d 14, 18 (D.C. Cir. 2015) (quotations omitted); *Monell*, 436 U.S. at 694. A

municipality cannot possibly be liable under § 1983 if there is no predicate constitutional

violation; in other words, "if 'an officer inflicted no constitutional injury, it is inconceivable that

[a] city could be liable.'" *Lane v. District of Columbia*, 887 F.3d 480, 488 (D.C. Cir. 2018)

(quoting *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986)).

Both Plaintiffs' Fourth and Fifth amendment claims require a finding that the individual

defendants intentionally caused the collision that resulted in Mr. Price's death. If there was no intentionally caused collision, there was no constitutional violation.  The Supreme Court has held that a Fourth Amendment seizure occurs "only when there is a governmental termination of freedom of movement *through means intentionally applied.*" *Brower v. Cnty of Inyo*, 489 U.S. 593, 597 (1989) (emphasis in original).  It explained that no seizure would occur even where a "pursuing police car sought to stop" someone by "flashing lights and continuing pursuit, but accidentally stopped the suspect by crashing into him." *Cnty of Sacramento v. Lewis*, 523 U.S. 833, 844 (1998) (discussing *Brower* and holding that, in the case at hand, no seizure occurred where pursuing police car accidentally collided with tipped motorcycle rider). Similarly, "only a purpose to cause harm unrelated to the legitimate object of arrest … will satisfy the element of arbitrary conduct shocking to the conscience, necessary for a due process violation." *Id*. at 836. "[H]igh-speed chases with no intent to harm suspects physically" are not "redressible by an action under § 1983." *Id*. at 854 (reversing judgment for plaintiffs where evidence showed reckless disregard by officer resulting in fatal collision).  Thus, even if Plaintiffs' allegation that the individual officers were chasing Price was true, which it is not, Plaintiffs would still need to prove that the officers (or just Pearson) intended to collide with Price.

**B.      Discovery Into Plaintiffs' Constitutional Claims Against the District Will Be Contentious, Costly, and Time-Consuming.**

As discussed above, Plaintiffs expect their own discovery in this case to cost more than $100,000; to consume at least a year; and to require more than a dozen fact depositions by the plaintiffs alone, plus experts. *See* Background, above; [10] at 16, 17. In support of their *Monell* claims, they intend to explore allegations of a systemwide "cover-up" conspiracy at MPD, allegedly including officers at "all levels," Compl. ¶ 46(L), 73, including the Chief of Police, whom they want to depose about his alleged decision to retain an officer who is not a party to

8

this case, *see* Note 2 above. They want to present dozens, or hundreds, of fact witnesses, who will speak to an untold number of *other* police-involved collisions. *Id.* ¶ 40; [10] at 4; [12-1] at 2.

      If Plaintiffs are allowed to proceed with *Monell* discovery, the District will be forced to resist what it already views as largely irrelevant, expensive, and unduly burdensome discovery. It will, for example, move for a protective order to foreclose Plaintiffs' attempt to relitigate the *Robinson* case—including deposition of Chief Newsham and production of the "running resumes" of, or other documents concerning, officers not a party to this case, such as Detective Pepperman—and to prohibit exploration of Plaintiffs' irrelevant conspiracy theories.[3]

      The District would also be forced to conduct its own extensive discovery into Plaintiffs' relevant allegations, including Plaintiffs' 200-plus witnesses to other police-involved collisions. Even assuming this burden could be limited to a sample of these witnesses or incidents, each additional incident would likely increase the discovery burden in this case by 100%, because the District would need to investigate the circumstances of each incident in the same way (documents, depositions, experts, etc.). That may entail hundreds of hours in video-viewing alone. (Plaintiffs are correct that there are dozens of videos related to the collision that resulted in Mr. Price's death, which the District will produce and is already reviewing.)

      In sum, if plaintiffs are allowed to proceed with *Monell* discovery, the effort will certainly be contentious, costly, and time-consuming.

### C.    <u>Bifurcation of Claims and a Stay of Discovery Mitigates These Burdens.</u>

      Phased litigation of plaintiffs' constitutional claims could entirely avoid, or significantly mitigate, the anticipated disputes and burdens described above. The first phase would focus on

---

[3]      These disputes would be in addition to the District's forthcoming motion for a protective order permitting the District to designate certain documents as confidential.

the key question of whether any of the individual officers intended to seize or harm Mr. Price by forcing his collision with Officer Pearson. Discovery, and litigation of dispositive motions or trial, as necessary, would be limited to the exploration of this question; the lesser question of whether the individual defendants negligently caused Mr. Price's death (per plaintiffs' common law negligence claims); plaintiffs' other common law claims, which also focus on the events of May 4, 2018 and the individual officers;[4] and Plaintiffs' demands for damages.

If Plaintiffs fail to show that any of the officers intentionally caused the collision, Plaintiffs' constitutional claims will be at an end, and the Parties need not engage in any *Monell* discovery or litigation.  If Plaintiffs obtain a judgment that any of the officers intentionally caused the collision, the Parties would likely engage in mediation and pursue *Monell* discovery as needed.  If the Parties proceed to litigate Plaintiffs' *Monell* claims, there will be very little duplication of evidence because the matter would then be focused entirely on incidents *other than* the events of May 4, 2018, which would be necessary to show a District custom.

The Court has broad discretion to phase litigation in this way under Federal Rules of Civil Procedure 26 and 42. *See*, *e.g.*, Standard of Review, above; *Hussain v. Nicholson*, 435 F.3d 359, 363 (D.C. Cir. 2006) (upholding discovery order and explaining the court is "especially reluctant to interfere with district court decisions regarding their own day-to-day operations," including exercises of discretion to control court dockets); *United States v. Microsoft Corp.*, 253

---

[4]     Plaintiffs allege, under D.C. common law, that the District failed to adequately hire, train, or supervise the individual officers. Compl. at pp. 33, 53. Specifically, Plaintiffs allege a failure to supervise. *Id.* ¶ 134. To prevail on this claim, Plaintiffs must "show that an employer knew or should have known its employee behaved in a dangerous or otherwise incompetent manner, and that the employer, armed with that actual or constructive knowledge, failed to adequately supervise the employee." *Jenkins v. District of Columbia*, 223 A.3d 884, 898 (D.C. 2020). Plaintiffs' complaint alleges only one instance of misconduct by the individual officers, which is the collision on May 4, 2018 that resulted in the death of Mr. Price. *See generally* Compl.

F.3d 34, 100 (D.C. Cir. 2001) ("Trial courts have extraordinarily broad discretion to determine the manner in which they will conduct trials.").

Federal courts in the District of Columbia have recognized the wisdom of phased litigation in cases such as this, "where the evidence offered on two different issues will be wholly distinct, or where litigation of one issue may obviate the need to try another issue." *Athridge*, 604 F.3d at 635 (affirming order to bifurcate trial because evidence concerning insurer's liability for crash was distinct from evidence about driver's state of mind, and decision on state-of-mind could obviate trial of insurer's liability) (internal quotations omitted); *McIntosh v. District of Columbia*, Civil Action No. 96-200, 1997 WL 785624, at *2-4 (D.D.C. Dec. 9, 1997) (granting motion to bifurcate litigation of predicate constitutional violation and *Monell* liability in excessive force case, and to stay discovery concerning District, on finding "a significant likelihood that a separate trial against [individual officer] would eliminate the need for a second trial against the District" and "save altogether" the postponed discovery); *Houlahan v. Aiello*, Civil Action No. 4-1161, 2018 WL 1413365, at *2 (D.D.C. Feb. 21, 2018) (explaining decision to bifurcate trial where failure to prove first issue avoided trial of second).

In the neighboring federal District of Maryland, municipal defendants routinely seek, and the courts routinely grant, motions to phase § 1983 litigation by conducting discovery and trial of the alleged constitutional violations first, then litigating *Monell* liability as needed. *See*, *e.g.*, *Grim v. Baltimore Police Dep't*, Civil Action No. 18-3864, 2020 WL 1063091, at *5 (D. Md. Mar. 5, 2020) (collecting nine such cases in the District of Maryland); *Okezie v. Prince George's Cnty*, Civil Action No. 13-0168, 2014 WL 1334188, at *1 (D. Md. Apr. 1, 2014) (same, citing eight different District of Maryland cases). Indeed, neighboring courts phase § 1983 litigation *sua sponte*. *E.g.*, *McCullough v. Anne Arundel Cnty*, Civil Action No. 19-926, 2020 WL 836235,

at *7 (D. Md. Feb. 20, 2020) (bifurcating claims and staying *Monell* discovery *sua sponte*, explaining that "courts in this district have found that bifurcation maximizes efficiency, minimizes unfair prejudice and delay, and results in fairer proceedings"); *Brown v. Bailey*, Civil Action No. 11-01901, 2012 WL 2188338, at *4 (D. Md. June 13, 2012) (same, in "the interests of efficiency and judicial economy").

The same is true in other federal districts across the country, including district courts serving New York, Los Angeles, and Chicago. *See, e.g.*, *Amato v. City of Saratoga Springs*, 170 F.3d 311, 320 (2d Cir. 1999) (discussing reasons for "frequent bifurcation of proceedings where a plaintiff has initiated a § 1983 action against individual officials and municipal entities"); *Dominguez v. City of Los Angeles*, Civil Action No. 17-4557, 2018 WL 6164278, at *1 (C.D. Cal. Oct. 9, 2018) (bifurcating *Monell* claims *sua sponte* "consistent with its usual practice"); *Bradford v. City of Chicago*, Civil Action No. 16- 1663, 2019 WL 5208852, at *2 (N.D. Ill. Oct. 16, 2019) ("Motions to bifurcate *Monell* claims are frequently granted in this District because such claims typically require a significant amount of work—including expert discovery—that may ultimately be for naught because in many if not most cases, disposition of the individual claims will either legally or practically end the litigation.") (internal quotations omitted).

## II.     Phased Litigation Would Prevent Undue Prejudice to the Individual Officers.

Even if the Court permits Plaintiffs' *Monell* discovery to go forward, trial of Plaintiffs' claims against the individual officers and the District should be bifurcated to avoid the undue prejudice that would infect the officers' defenses if the claims were presented together. As discussed above, Plaintiffs intend to present evidence about numerous other police-involved collisions in support of their *Monell* claims. *See* Section I.B above. And, as Plaintiffs explained during the scheduling conference with this Court, Plaintiffs incorrectly believe they can use

12

evidence concerning these other collisions to support their allegation that Officer Pearson intentionally collided with Mr. Price. [15-8] at 19:25-20:6 ("The Court: So you're suggesting that the evidence about pattern and practice would be relevant on whether there was an intentional act committed here? Mr. Shurtz: Yes, absolutely.  Because it's done all the time and it's— Pepperman was laughing before he hit Robinson head on.  Yes this is— it's the culture. …"). Plaintiffs' trial plan would inevitably prejudice the individual officers.

In the context of excessive force cases, such as this one, numerous federal courts have held that evidence of an alleged municipal policy or custom is not admissible to establish whether excessive force was used in a specific case because it is unduly prejudicial. *E.g.*, *Quintanilla v. City of Downey*, 84 F.3d 353, 356 (9th Cir. 1996) (upholding exclusion of evidence about alleged customary use of police dogs from bifurcated trial of claims against individual officers because admission could have resulted in prejudice and confusion); *McIntosh*, 1997 WL 785624, at *3 ("[S]ome of the strongest evidence admissible against the District … would unduly prejudice [the individual officer's] personal defense."); *Grim*, 2020 WL 1063091, at *6 (evidence of "prior incidents," the "nature of such incidents" and "the municipal policy-makers' reaction to them" is "not relevant to plaintiffs' suit against" individual officer) (internal quotations omitted); *Beasley v. Kelly*, Civil Action No. 10-0049, 2010 WL 3221848, at *3 (D. Md. Aug. 13, 2010) (finding same such evidence would be "highly prejudicial to the individual" defendants); *Foltz v. City of Largo*, Civil Action No. 10-759, 2011 WL 1690010, at *2 (M.D. Fla. May 3, 2011) (collecting cases from Florida, New York, Illinois); *Wells v. City of Dayton*, 495 F. Supp. 2d 793, 795 (S.D. Ohio 2006) ("[T]hese individual Defendants cannot be made to bear the burden of answering for all of the alleged misdeeds of every past and current … police officer … . A jury must be allowed to consider the evidence regarding this incident, …

unimpaired by a torrent of information concerning the conduct of police officers in other

unrelated situations at other times … .").

Each of these courts bifurcated trial of the claims against the individual officers and their

municipal employers in order to avoid undue prejudice. 1997 WL 785624, at *3; 2020 WL

1063091, at *6; 2010 WL 3221848, at *4; 2011 WL 1690010, at *3; 495 F. Supp. 797. This

Court should do the same.

**CONCLUSION**

For the foregoing reasons, the Court should grant Defendants' motion to bifurcate

litigation and trial of Plaintiffs' § 1983 claims against the individual officers and the District, and

stay discovery concerning Plaintiffs' § 1983 claims against the District pending a judgment for

Plaintiffs that any of the officers committed a constitutional violation.

Respectfully submitted,
KARL A. RACINE
Attorney General for the District of Columbia

CHAD COPELAND
Deputy Attorney General
Civil Litigation Division

/s/ Michael K. Addo
MICHAEL K. ADDO [1008971]
Chief, Civil Litigation Division Section IV

/s/ David A. Jackson
DAVID A. JACKSON [471535]
Assistant Attorney General
Office of the Attorney General
Suite 630 South
441 Fourth Street, NW
Washington, DC  20001
(202) 724-6618
(202) 741-8999 (fax)
davida.jackson@dc.gov

/s/ Asha S. Bryant
ASHA S. BRYANT [1022294]
Assistant Attorney General
Office of the Attorney General
Suite 630 South
441 4th Street, NW
Washington, DC 20001
(202) 807-0359 (direct)
(202) 727-6295 (main)
(202) 213-8820 (mobile)
(202) 741-8886 (fax)
asha.bryant2@dc.gov

/s/ Mateya B. Kelley
MATEYA B. KELLEY [888219451]
Assistant Attorney General
Equity Section
Public Interest Division
Office of the Attorney General
Suite 630 South
441 Fourth Street, NW
Washington, D.C. 20001
mateya.kelley@dc.gov
(202) 724-7854  (Phone)
(202) 730-0626  (Fax)

15